IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Gentry Technology of S.C., Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 1:11-cv-1232-TLW |
| | ) | |
| Baptist Health South Florida, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# ORDER

The plaintiff, Gentry Technology of S.C., Inc. ("Gentry" or "plaintiff"), filed this civil action on May 20, 2011, alleging causes of action for breach of contract and unjust enrichment. (Doc. # 1). The defendant, Baptist Health South Florida, Inc. ("Baptist" or "defendant"), filed a motion to dismiss based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and based on improper venue under Rule 12(b)(3). (Doc. # 9). In the alternative, the defendant requests that the Court transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). (Doc. # 9). The plaintiff submitted a response in opposition (Doc. # 14), and the defendant filed a reply in support of its motion (Doc. # 15). Having reviewed the applicable law and memoranda submitted, this motion is now ripe for disposition.

## FACTS

Baptist is a Florida non-profit health care organization with its principal place of business in Coral Gables, Florida. Def.'s Mem. Supp. Mot. Dismiss, p. 2 (Doc. # 9, attach. 1). Baptist's only corporate office is maintained in Coral Gables, and it has no other corporate offices elsewhere in the United States. Id. Gentry is a corporation organized under the laws of South

1

Carolina with its principal place of business in Columbia, South Carolina. Taylor Aff. ¶ 3 (Doc. # 14, attach. 1). Robert Taylor is Gentry's sole corporate officer. Id. ¶ 2.

Taylor states in his affidavit that he was in South Carolina when, in late 2005, George Lakis, director of the Media Services department of Baptist, called him about designing, engineering, and installing cable television systems for certain Baptist facilities. Taylor Aff. ¶ 4. Taylor accepted Lakis's offer on Gentry's behalf.[1] Id. From early 2006 until August or September 2009, Gentry designed and engineered the cable television systems at Gentry's office, which was located in Aiken, South Carolina. Id. ¶¶ 5, 7. Until 2009, all of Gentry's corporate records and employees were in Aiken. Id. ¶ 6. In addition, Gentry's dispatch office, manufacturing shop, storage, IT department, and every other operational department were located in Aiken. Id. Gentry's company vehicles were also registered in South Carolina. Id. Beginning in 2006, according to Taylor, the process followed to comply with the parties' agreement was as follows. Id. ¶ 7. Gentry submitted proposals to Baptist regarding cable television systems to be installed at Baptist's facilities. Id. Some of these proposals are attached to Taylor's affidavit as Exhibit "C." (Doc. # 14, attach. 2). Baptist responded by sending purchase orders to Gentry specifying the products and services Baptist selected. Taylor Aff. ¶ 7. An example of a purchase order Baptist sent to Gentry is attached to Taylor's affidavit as Exhibit "D." (Doc. # 14, attach. 2). Gentry ordered the necessary equipment from various vendors. Taylor Aff. ¶ 7. The equipment was delivered to Gentry's facility in Aiken, and Gentry, with the help of local subcontractors, designed, engineered, and built the cable television systems at its

---

[1] The defendant provides an affidavit in which the affiant avers that in 2006, "Baptist decided to solicit bids to consolidate its cable services to one provider for every Baptist hospital site" and that Lakis requested Gentry submit a bid for the project due to Baptist's preexisting relationship with Gentry. Agosto Aff. ¶ 6 (Doc. # 15, attach. 1). Whether a contract was formed upon this initial phone call or when Baptist later accepted Gentry's bid is not material to the issues currently before the Court.

location in Aiken.  Id.  Once completed, Gentry shipped the television systems to Baptist in Florida.  Id.  According to Taylor, all of Gentry's bills or invoices relating to the parties' agreement were generated out of Aiken, and Baptist submitted its payments to Gentry's location in Aiken.  Id. ¶¶ 8-9.  Examples of checks allegedly sent to Aiken are attached to Taylor's affidavit as Exhibit "E."  (Doc. # 14, attach. 2).  Gentry deposited these checks at its bank in Aiken.  Taylor Aff. ¶ 10.

Taylor states that although both Gentry and Baptist were performing under a contract since early 2006, they did not sign an actual agreement until April 1, 2007.  Taylor Aff. ¶ 11.  The delay was caused by the extensive negotiation that took place between Gentry's South Carolina attorneys and Baptist's Florida attorneys.  Id. ¶ 11.  In connection with the negotiation, Baptist's attorneys sent several revisions and comments relating to the terms of the contract to Gentry's attorney, James M. Holly, in Aiken.  Id. ¶ 12.  Ray Massey, another South Carolina attorney who represented Gentry, also received communication from Baptist's lawyers about the contract.  Id. ¶ 13.

According to Taylor, starting in 2006, Baptist made "numerous and regular contacts" with Gentry in South Carolina.  Taylor Aff. ¶ 14.  Baptist's representatives regularly telephoned Taylor in South Carolina and sent to Gentry's office a large volume of documents, including but not limited to budgets, lists of desired channels, charts, and other communications.  Id.  Some of these documents are attached to Taylor's affidavit as Exhibit "G."  (Doc. # 14, attach. 2).

After Taylor's wife passed away, Baptist asked Taylor to go to Florida to help ensure the cable television and other systems were properly maintained.  Taylor Aff. ¶ 26.  Taylor went to Florida in approximately August or September of 2009.  Id. ¶ 27.  Gentry's corporate, accounting, billing, tax returns, and other operational records and equipment were moved to the

location of Gentry's accountants in Columbia, South Carolina. Id. ¶ 28. After the term of the contract with Baptist allegedly was extended to October 2012, Taylor asserts Gentry filed an application by foreign corporation with the state of Florida on January 29, 2010. Id. ¶ 30.

Taylor asserts the business relationship between Gentry and Baptist deteriorated within a few months after he went to Florida. Taylor Aff. ¶ 31. In August 2010, Gentry filed suit against Baptist in Florida to recover its equipment. Id. ¶ 33; Def.'s Mot. Dismiss, Ex. C (Doc. # 9, attach. 4). Baptist filed a motion to dismiss Gentry's cause of action for replevin, which was granted without prejudice. Taylor Aff. ¶ 33 & Exs. J, K. (Doc. # 14, attachs. 1, 2). Taylor states that in light of his "rapidly deteriorating health and . . . plans to come back to South Carolina, Gentry dismissed the Florida lawsuit against Baptist without prejudice." Id. ¶ 33. On May 20, 2011, Gentry filed this lawsuit in the Aiken Division of the United States District Court for the District of South Carolina. (Doc. # 1).

## DISCUSSION

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

Baptist moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). When a district court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id.

4

Gentry asserts specific personal jurisdiction exists in this case. Specific jurisdiction exists "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984). Determining whether it exists involves a two-part analysis. First, the court must determine whether the defendant falls within the meaning of the forum state's long-arm statute. Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000). If so, the court must consider whether exercising jurisdiction is consistent with the Fourteenth Amendment's due process requirement. Id.

**a. Long-Arm Statute**

South Carolina's long-arm statute provides that a court may exercise jurisdiction over causes of action arising from various categories of conduct. See S.C. Code Ann. § 36-2-803. South Carolina courts have construed the long-arm statute "to extend to the outer limits of the due process clause." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005) (citing Meyer v. Paschal, 498 S.E.2d 635, 638 (S.C. 1998)); see also Atlantic Soft Drink Co. v. S.C. Nat'l Bank, 336 S.E.2d 876, 878 (S.C. 1985); Hammond v. Cummins Engine Co., 336 S.E.2d 867, 868 (S.C. 1985); Cozi Invs. v. Schneider, 252 S.E.2d 116, 118 (S.C. 1979); Triplett v. R.M. Wade & Co., 200 S.E.2d 375, 379 (S.C. 1973). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process."[2]  Id.

---

[2] South Carolina courts have, at times, applied a stricter interpretation of the long-arm statute. See Coggeshall v. Reprod. Endocrine Assocs. of Charlotte, 655 S.E.2d 476, 480 (S.C. 2007); Clark v. Key, 405 S.E.2d 599, 600–01 (S.C. 1991); Aviation Assocs. & Consultants v. Jet Time, Inc., 402 S.E.2d 177, 179 (S.C. 1991); White v. Stephens, 387 S.E.2d 260, 262-63 (S.C. 1990). Applying a stricter interpretation, hearing this case is appropriate because the long-arm statute allows a court to "exercise personal jurisdiction over a person . . . as to a cause of action

5

**b. Due Process**

This Court's power to render a valid personal judgment against a nonresident defendant is limited by the Due Process Clause of the Fourteenth Amendment. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). For the exercise of jurisdiction to comport with due process, a defendant must have sufficient "minimum contacts" with South Carolina "such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" Id. at 291-92 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Minimum contacts exist if the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297. In determining if there are minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citation omitted). "[R]andom," "fortuitous," or "attenuated" contacts are not enough. Id. "[W]here the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id. at 475-76 (citations omitted).

---

arising from the person's . . . entry into a contract to be performed in whole or in part by either party in [South Carolina]." S.C. Code Ann. § 36-2-803(A)(7).

Drawing all reasonable inferences arising from the proof and resolving all factual disputes in the plaintiff's favor, the Court finds that Gentry has made a prima facie showing of minimum contacts. First, according to Taylor, a representative of Baptist, Lakis, made the initial contact that resulted in the agreement from which this lawsuit arose by calling Taylor about designing, engineering, and installing cable television systems for Baptist's facilities. Taylor Aff. ¶ 4. Taylor's statement is consistent with the affidavit of Baptist's Manager of Telemedicine & eHealth Services who avers that in 2006, "Baptist decided to solicit bids to consolidate its cable services to one provider for every Baptist hospital site" and that Lakis requested Gentry submit a bid for the project due to Baptist's preexisting relationship with Gentry. Agosto Aff. ¶ 6 (Doc. # 15, attach. 1).

Second, part of the contract was performed in South Carolina, as Taylor states that, between early 2006 and August or September 2009, Gentry performed on the agreement out of South Carolina. Taylor Aff. ¶¶ 5, 7. This performance included Gentry submitting proposals to Baptist regarding cable television systems to be installed, Baptist responding by sending purchase orders specifying the products and services desired, and Gentry ordering the necessary equipment from different vendors. Id. ¶ 7. This performance also included designing, engineering, and building the television systems and then shipping them to Baptist. Id.

In its reply, Baptist asserts that the terms of the contract call for Gentry to perform on Baptist's property in Florida and that nowhere in the contract is it contemplated that any portion of the contract is to be performed in South Carolina. However, the parties' agreement calls for Gentry to "design, construct, locate, operate and maintain a digital satellite distribution system" on Baptist facilities. Agreement (Doc. # 1, attach. 1). There is sufficient evidence, at this stage, for the Court find it was within the contemplation of the parties that Gentry, a South Carolina

corporation with its only office in Aiken, South Carolina at the time the parties entered into the agreement, would perform part of the contract in South Carolina, particularly the designing and constructing portion. Taylor Aff. ¶¶ 5, 7. Moreover, even if it was not within the contemplation of the parties, there is evidence Baptist was aware Gentry was performing on the contract in South Carolina between 2006 and 2009, as Gentry sent proposals to Baptist during this time frame and Baptist responded with purchase orders. Id. ¶ 7 & Exs. C, D. In addition, Gentry generated bills or invoices related to the contract out of Aiken, and Baptist submitted payments to Gentry's location in Aiken. Id. ¶¶ 8, 9 & Ex. E.

   Additional contacts include the correspondence between Baptist's attorneys in Florida and Gentry's attorneys in South Carolina during the negotiation that resulted in the parties reaching a formal, written agreement on April 1, 2007. Taylor Aff. ¶¶ 11-13. Also, according to Taylor, Baptist's representatives regularly telephoned him in South Carolina during the course of their business relationship and Baptist sent a large volume of documents related to the agreement to Gentry's office in South Carolina. Id. ¶ 14. Therefore, after careful consideration of the parties' arguments and the contacts described, the Court concludes the plaintiff has made a prima facie showing of minimum contacts. See Burger King, 471 U.S. at 473 (noting the Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities" (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)); Consulting Eng'r Corp. v. Geometric, Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (listing contacts courts traditionally examine in the business context in determining whether there is purposeful availment and including among them "whether the defendant reached into the forum state to solicit or initiate business," "the nature,

8

quality and extent of the parties' communications about the business being transacted," and "whether the performance of contractual duties was to occur within the forum"); <u>Vishay Intertechnology, Inc. v. Delta Int'l Corp.</u>, 696 F.2d 1062, 1068 (4th Cir. 1982) (finding exercise of jurisdiction over California corporation by a North Carolina court was consistent with due process where the California corporation initiated the contacts with Vishay in North Carolina and the contacts were limited to three letters and five telephone calls); <u>McNeil v. Sherman</u>, Civil Action No. 2:09-CV-00979-PMD, 2009 WL 3255240, at *5 (D.S.C. Oct. 7, 2009) ("Given that Sherman knowingly established an ongoing business relationship with a South Carolina resident in a contract for the design and development of a new website, the court finds that Sherman purposefully availed himself of the benefits of doing business in South Carolina . . . ."); <u>Gateway Gaming, L.L.C. v. Custom Game Design, Inc.</u>, C.A. No. 8:06-01649-HMH, 2006 WL 2781043, at *3 (D.S.C. Sept. 25, 2006) (finding minimum contacts existed where a Texas corporation entered into an agreement with a South Carolina company "which resulted in relationship between the two companies lasting well over a year").

In addition to minimum contacts, exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." <u>Asahi Metal Indus. Co. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 113 (1987) ("<u>Asahi</u>"). In making this determination, courts consider (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." <u>World-Wide Volkswagen</u>, 444 U.S. at 292; <u>see also</u> <u>Asahi</u>, 480 U.S. at 113.

After examining the factors outlined by the Supreme Court, this Court finds that exercising personal jurisdiction over Baptist does not offend traditional notions of fair play and substantial justice.  While it may be burdensome for Baptist to litigate this dispute in South Carolina, it intentionally made the contacts with South Carolina sufficient to confer jurisdiction over it.  Furthermore, South Carolina has a strong interest in adjudicating a dispute arising out of a contract between one of its residents and an out-of-state corporation, particularly in light of the fact that part of the contract was performed in South Carolina.  See Fallon Luminous Prods. Corp. v. Multi Media Elecs, Inc., 343 F. Supp. 2d 502, 508 (D.S.C. 2004) (noting "South Carolina's compelling interest of discouraging injuries that occur within the state" (citation and internal quotation marks omitted)); Askins v. Firedoor Corp. of Fla., 316 S.E.2d 713, 717 (S.C. Ct. App. 1984) ("South Carolina has a legitimate interest in providing the means for its citizens to seek redress against foreign corporations which allegedly breach contracts with its citizens when it was contemplated that such contracts would be performed in whole or in part in this State.").  In addition, Gentry "has a strong interest in litigating in its choice of forum." Gateway Gaming, 2006 WL 2781043, at *5; see also McNeil, 2009 WL 3255240, at *6.  Finally, the Court does not conclude it would be significantly less efficient to resolve this dispute in South Carolina as opposed to Florida.

**II. Motion to Dismiss Based on Improper Venue**

Baptist also moves to dismiss based on improper venue under Federal Rule of Civil Procedure 12(b)(3).  "When a defendant objects to venue under Rule 12(b)(3), plaintiff bears the burden of establishing that venue is proper." Motley Rice, L.L.C. v. Baldwin & Baldwin, L.L.P., 518 F. Supp. 2d 688, 691 (D.S.C. 2007).  Federal law provides that a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the

State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).[3]

Baptist asserts this Court is an improper venue because the sole defendant has its principal place of business in Miami, Florida and the location of the alleged acts giving rise to the plaintiff's claims is Miami, Florida. However, after careful consideration and based on the contacts described in connection with the Court's finding that sufficient minimum contacts exist, the Court concludes that a substantial part of the alleged events or omissions giving rise to the plaintiff's claims occurred in South Carolina. Therefore, this Court is a proper venue for this lawsuit.

**III. Motion under 28 U.S.C. § 1404(a) to Transfer Venue**

In the alternative, the defendant requests that the Court transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." A "district court has broad discretion to grant or deny a motion to transfer to another district." Landers v. Dawson Constr. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (per curiam). "Therefore, a district court's ruling on a motion to transfer will be reversed only for a clear abuse of discretion." Id. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v.

---

[3] The Court is using the current version of 28 U.S.C. § 1391, which was amended on December 7, 2011, as its analysis is not impacted by the changes to the statute.

11

Reyno, 454 U.S. 235, 255 (1981).  As a result, in considering a change of venue, "a district court is required to weigh the factors involved and '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946)) (alteration in original); Sw. Equip., Inc. v. Stoner & Co., C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) ("Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff.").  The following factors are commonly considered in ruling on a motion to transfer:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Landers, 1999 WL 991419, at *2.

After careful consideration, the Court does not find that a transfer of venue is warranted in this case.  As for the first factor, ease of access to sources of proof, Baptist asserts its records pertinent to this action are located in Florida.  Gentry counters by arguing that its records are located in South Carolina.  Consequently, this factor does not weigh in favor of either party.

Baptist's primary argument is based on factors two and three—convenience of parties and witnesses and the cost of obtaining the attendance of witnesses.  Baptist asserts all of its employees and virtually all of the witnesses it likely will call are located in Florida.  Conversely, Gentry argues most of its witnesses are not in Florida, including the technicians who helped build the television cable systems, the attorneys who negotiated the contract with Baptist, and Gentry's accounting and billing personnel.  Taylor, who is Gentry's sole officer, is also in South

Carolina and allegedly in poor health.  See Feralloy Corp. v. SPIG Indus., Civil Action No. 2:09-3028-RMG, 2010 WL 3432283, at *3-*5 (D.S.C. Aug. 30, 2010) (considering the poor health of a witness who played a key role in the underlying facts of a case in determining whether a transfer was appropriate).  In addition, Gentry asserts the vendors from whom it purchased the components and other equipment used to build the cable television systems are located in states other than South Carolina and Florida; thus, neither forum is more convenient than the other for these potential witnesses.  In addition to the number of witnesses, courts have noted that the "materiality of the prospective witnesses' testimony" should also be considered.  McNeil, 2009 WL 3255240, at *8.  The Court does not conclude this factor weighs in favor of a transfer.  Therefore, after considering the convenience of the witnesses and parties and the cost of obtaining the attendance of witnesses, the Court does not find that these considerations warrant a transfer of venue.  See Sw. Equip., 2010 WL 4484012, at *2 ("[T]ransfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other.").

     Neither Baptist nor Gentry emphasizes factor four, which is the availability of compulsory process, or argues a view by the jury of any premises is necessary in this case.  Finally, with respect to factors six and seven, "South Carolina has a local interest in providing a forum for South Carolina residents to seek redress for injuries caused to them by out-of-state defendants."  McNeil, 2009 WL 3255240, at *8.  Here, South Carolina has a strong interest in providing a forum for a corporation organized under its laws to seek redress for damages sustained after it entered into a contract with an out-of-state corporation which later allegedly breached the agreement, particularly in light of the fact there is evidence that the out-of-state corporation made the initial contact that resulted in the contract and that part of the contract was performed in South Carolina.  The Court also does not find that this case should be transferred

based on the defendant's argument that the plaintiff's choice of forum should be accorded less deference since it previously filed and dismissed an action in Florida under the same facts that gave rise to the current lawsuit. Therefore, after considering all of the relevant factors and applicable law, Baptist's motion to transfer venue is denied.

## CONCLUSION

For the reasons set forth herein, the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer venue (Doc. # 9) is **DENIED**.

**IT IS SO ORDERED.**

                              s/Terry L. Wooten
                              TERRY L. WOOTEN
                              United States District Judge

March 13, 2012

Florence, South Carolina